## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

In re:

LUXURY VENTURES, LLC                    Bankruptcy Case No. 9:07-bk-11224
d/b/a HENRICKS JEWELLERS,

       Debtor,
_____/

MARK V. SILVERIO and                    Appellate Case No. 2-09-cv-180-CEH
SILVERIO & HALL, P.A.,

       Appellants,

v.

GERALD A. McHALE, JR.,
the Liquidating Trustee,

       Appellee.
_____/

## **ORDER**

This cause comes before the Court on Appellants Mark V. Silverio and Silverio & Hall, P.A.'s May 29, 2009 appeal (Doc. 10) of the Bankruptcy Court's Order denying their Verified Application for Payment by Liquidating Trustee of Attorney Fees (Bankr. Doc. 360). On September 4, 2009, Appellee Gerard A. McHale filed his Brief in Opposition (Doc. 19), to which Appellants filed a Reply (Doc. 25). This matter is ripe for review.

## BACKGROUND

In 2002, Patrick Hopper, Kevin Waters, and Robert Baumgardner ("the individual plaintiffs") formed Luxury Ventures, LLC, a Florida limited liability company. Bankr. Doc. 228 at 4. Luxury Ventures was created to facilitate the acquisition of Henricks Jewelry, Inc., a business

owned and operated by Richard Grimes. *Id.* That purchase was consummated on or about April 21, 2003 for an adjusted price of $9 million. *Id.* To finance the purchase, the individual plaintiffs delivered a promissory note to Grimes in a principal amount of $4.5 million. *Id.* Additional financing was secured through loan and security agreements issued by Wester Business Credit Corporation and Sangam Diamonds Corporation. *Id.* at 5.

In April of 2007, Luxury Ventures and the individual plaintiffs filed an eleven-count complaint against Grimes and Henricks, alleging fraud, fraudulent inducement, breach of contract, breach of fiduciary duty, negligence, and conversion as a result of representations allegedly made in conjunction with the Henricks Jewelry Inc. acquisition (the "Grimes action"). *Id.* at 6. Appellants Mark A. Silverio and Silverio & Hall, P.A. ("S&H") were retained as counsel for Luxury Ventures and the individual plaintiffs.

On November 19, 2007, Luxury Ventures filed a voluntary petition under Chapter 11 of Title 11 of the United States Bankruptcy Code. *Id.* The next day, Luxury Ventures filed an application to employ S&H to continue litigating the Grimes action. Bankr. Doc. 31. The Bankruptcy Court granted that application on May 14, 2008 *nunc pro tunc*. Bankr. Doc. 231. On June 12, 2008, S&H submitted a fee application seeking compensation for its legal services in the Grimes action to the Bankruptcy Court. Bankr. Doc. 294. After a hearing, these pre-confirmation fees were granted by the Bankruptcy Court. Bankr. Doc. 347.

On June 17, 2008, the Bankruptcy Court entered a Confirmation Order confirming the plan *nunc pro tunc*. The plan's effective date was June 16, 2008. Bankr. Doc. 227. The plan provided for the appointment of post-Confirmation professionals as follows:

> The Liquidating Trustee may engage counsel, consultants and financial advisors, including counsel, consultants, financial advisors to the Debtor, former employees of the Debtor and counsel to the Committee, as he may deem necessary, in his sole discretion, to aid in the performance of his duties and responsibilities...[a]ny fees and expenses of such counsel, consultants and/or financial advisors shall constitute Post Confirmation Administrative Claims and shall be paid from Available Cash upon application to the Court.  The Bankruptcy Court shall retain jurisdiction to allow or disallow Post-Confirmation Administrative Claims..."

Bankr. Doc. 298 at ¶26.

Subsequent to the Confirmation Order, S&H continued to represent Luxury Ventures in the Grimes action, but, due to a conflict, ceased representing the individual plaintiffs in that action. Bankr. Doc. 360 at 2.  During its representation of Luxury Ventures, S&H provided the Liquidating Trustee, Gerard A. McHale, with reports regarding the Grimes action, and also provided a projection of fees and costs that S&H would need to incur in order to litigate the action to its conclusion.  *Id.* The Liquidating Trustee never responded to these projections, except to state that he needed time to consider his position regarding the Grimes action.  *Id.* at 3.  Although no formal engagement was ever consummated, S&H continued to communicate with the Liquidating Trustee, and S&H continued its involvement with the suit.  *Id.* at 4.

On November 7, 2008, the Liquidating Trustee settled all of Luxury Venture's claims in the Grimes action.  *Id.*  On November 19, 2008, the Liquidating Trustee filed a Motion to Approve Settlement with the Bankruptcy Court.  *Id.*  The settlement required Grimes and Henricks Jewelry, Inc. to pay the trust $10,000 and allowed the claims as general unsecured claims.  The settlement was contested by S&H on behalf of its client, the Reorganized Debtor.  Bankr. Doc. 367.  The Grimes action settlement agreement was approved by the Bankruptcy Court on January 23, 2009. Bankr. Doc. 369 at 1–2.

On December 9, 2008, S&H filed a fee application seeking to recover attorney's fees for its post-Confirmation legal efforts in the settlement of the Grimes action. Bankr. Doc. 360. At a January 8, 2009 hearing, the Liquidating Trustee opposed any compensation for S&H, arguing that the firm did not render him services and that no order or agreement approved the firm's engagement. *See, e.g.* Bankr. Doc. 390 at 63. On January 28, 2009, the Bankruptcy Court entered an Order denying the fee application due to S&H's failure to obtain prior court approval to litigate the Grimes action post-Confirmation and due to a lack of evidence supporting S&H's arguments that it should be awarded fees under theories of quantum meruit and equitable estoppel. Bankr. Doc. 371. On March 31, 2009, Mark V. Silverio and Silverio & Hall, P.A. appealed the Bankruptcy Court's Order denying their post-Confirmation attorney's fees.

## JURISDICTION

This matter is an appeal of a final order of the Bankruptcy Court. Accordingly, The Court has proper jurisdiction pursuant to 28 U.S.C. § 158(a)(1).

## ANALYSIS

A Bankruptcy Court's decision concerning attorney's fees is reviewed for abuse of discretion. *Speights & Runyan v. Celotex Corp.*, 227 F.3d 1336, 1338 (11th Cir. 2000) (citing *In re Hillsborough Holdings Corp.*, 127 F.3d 1398, 1401 (11th Cir. 1997)). A judge abuses his discretion if he fails to apply the appropriate legal standard, or if his findings of fact are clearly erroneous. *Id.*

**I. The Bankruptcy Judge Did Not Abuse His Discretion in Denying Appellants' Post-Confirmation Fees Under 11 U.S.C. §503(b)**

The Bankruptcy Judge did not abuse his discretion in denying Appellants' request for Post-Confirmation fees under section 503(b) because Appellants did not receive prior approval from the

Bankruptcy Court nor from the Liquidating Trustee. Additionally, Appellants' efforts did not offer a substantial contribution to the administration of the estate.

Section 503(b) governs applications for administrative expenses, including legal fees, during a Chapter 11 case. *See* 11 U.S.C.§ 503(b) (allowing for "...the actual, necessary costs and expenses of preserving the estate including wages, salaries, or commissions for services rendered after the commencement of the case..."). Absent unusual circumstances, a party may not make a claim for attorney's fees paid to an attorney whose employment has not been previously approved by the Bankruptcy Court. *See In re Lickman*, 273 B.R. 691, 700 (Bankr. M.D. Fla. 2002)[1]. The Bankruptcy Judge reiterated this rule when he stated that "[i]t is elementary and basic Bankruptcy law that no allowance can be made to a professional unless it was retained by the estate and approved by the Court." Bankr. Doc. 371 at 4. The language of the Confirmation Order also makes this clear. Bankr. Doc. 298 at ¶26 ("[t]he Bankruptcy Court shall retain jurisdiction to allow or disallow Post-Confirmation Administrative Claims"). In considering an award of administrative expenses, the Bankruptcy Judge must evaluate whether the attorney's actions offered a "substantial contribution" to the administration of the estate. *Lickman,* 273 B.R. at 701 n. 5; *In re Johnson*, 126 B.R. 808, 810 (Bankr. M.D. Fla. 1991) (describing a substantial contribution to include "services which...foster and enhance, rather than retard or interrupt the progress of reorganization) (internal citations omitted).

Appellants take the view that the reorganization plan does not require Bankruptcy Court

---

[1] In *Lickman*, the Bankruptcy Court reiterated that the Code's "numerous and detailed provisions concerning the employment of professional persons and their compensation and payment" suggests a legislative intent to require parties seeking reimbursement for administrative expenses to adhere to the specific requirements of the Code. *See Lickman*, 273 B.R. at 700 (quoting *In re Marlin Oil Co.*, 83 B.R. 50, 52 (Bankr. D. Colo. 1988).

Approval for post-Confirmation legal fees. The plan is clear, however, that Bankruptcy Court approval is necessary to recover such fees. See Doc. 298 at ¶26 ("[t]he Bankruptcy Court shall retain jurisdiction to allow or disallow Post-Confirmation Administrative Claims...").

Appellants did not obtain approval—either from the Bankruptcy Court or from the Liquidating Trustee—for their services. Appellants readily admit that although "S&H had repeatedly requested to be formally retained by the Liquidating Trustee for the work S&H was providing in the Grimes Litigation post-confirmation," no such request was ever formally consummated. Bankr. Doc. 360 at 3; *see also* Bankr. Doc. 390 at 60–61, 69 ("There was no formal engagement letter, Your Honor...I did whatever I could, except I didn't have a written engagement letter or an order of the court"). The Bankruptcy Court did not grant approval for Appellants' post-Confirmation efforts, either. *See* Doc. 390 at 61 ("There was no order [approving Appellants' administrative efforts] signed by you, Your Honor")[2].

In addition, Appellants' legal services did not provide a substantial contribution to the administration of the estate. Appellants' services were undertaken after the Confirmation Order was issued. Moreover, Appellants did not represent the Liquidating Trustee; Appellants' efforts were made on behalf of their client, the Debtor. *See* Bankr. Doc. 360 at ¶¶5, 10 ("S&H continued to represent the Debtor"); Doc. 360 Ex. G (reflecting post-Confirmation legal efforts undertaken on behalf of Luxury Ventures, LLC rather than on behalf of the Liquidating Trustee). There is no evidence that these efforts facilitated the Liquidating Trustee's settlement of the Grimes action. In fact, Appellants actually challenged the $10,000 Grimes action settlement after it was approved by

---

[2]It is especially telling that other professionals sought and obtained approval from the Bankruptcy Court for post-Confirmation services. *See, e.g.* Bankr. Docs. 332, 345.

6

the Liquidating Trustee. *See* Bankr. Doc. 367 at 7. In light of Appellants' explicit opposition to an action taken by the Liquidating Trustee, Appellants' argument that they represented the interests of the Liquidating Trustee is unpersuasive. Finally, a decision to grant Appellants' request for over $35,000 in attorney's fees for Appellants' efforts in obtaining a $10,000 settlement would clearly not serve the interests of the Liquidating Trustee. Accordingly, the Bankruptcy Judge did not commit an abuse of discretion in denying Appellants post-Confirmation attorney's fees under section 503(b)(1).

**II. The Bankruptcy Judge Did Not Abuse His Discretion in Denying Appellants' Request for Attorney's Fees Under Equitable Principles**

**A. Quantum Meruit**

In order to prevail on a theory of quantum meruit, a plaintiff must demonstrate (1) that it conferred a benefit on a defendant; (2) the defendant had knowledge of the benefit; (3) the defendant accepted or otherwise retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. *Hull & Co., Inc. v. Thomas*, 834 So.2d 904, 907 (Fla. 4th DCA 2003).

Appellants argue that they conferred a benefit upon the Liquidating Trustee when they rendered legal services in the Grimes case. Doc. 10 at 18. Although it appears that Appellants did communicate with the Liquidating Trustee during the Grimes action, the Liquidating Trustee settled the action without Appellants' knowledge. Bankr. Doc. 360 at 4. Appellants fail to make a showing that their efforts were accepted by or provided any assistance to the Liquidating Trustee, or even that they conferred any tangible benefit upon him. *See* Bankr. Doc. 371 at 5–6 ("there is no evidence before this Court or in this record that supports S&H's contention that the Liquidating Trustee asked

for any services to be performed by S&H, accepted any services performed by S&H, [or that] the services claimed by S&H assisted the Liquidating Trustee"). Accordingly, the Bankruptcy Judge did not abuse his discretion in denying Appellants post-Confirmation fees on the basis of quantum meruit.

**B. Equitable Estoppel**

In order to prevail on a theory of equitable estoppel, a party must demonstrate that (1) the party to be estopped misrepresented a material fact; (2) the party claiming estoppel relied on that representation; and (3) the party seeking estoppel must have changed its position to its detriment based upon the misrepresentation. *Zurich Am. Ins. Co. v. Frankel Enters.,* 287 Fed. Appx. 775, 779 (11th Cir. 2008) (*citing Watson Clinic, LLP v. Verzosa*, 816 So. 2d 832, 834 (Fla. 2d DCA 2002)). Under Florida law, equitable estoppel is to be applied with "great caution." *Id.*

Here, Appellants argue that they relied upon representations made by the Liquidating Trustee and that, based upon this reliance, they rendered legal services for the benefit of the trustee. Specifically, Appellants contend that they "reasonably and justifiably relied on the actions of the Liquidating Trustee and his counsel and did not seek a written retainer or fee agreement signed by the Liquidating Trustee, as it reasonably believed that it would be compensated for services rendered in the Grimes litigation for the benefit of the Liquidating Trustee." Bankr. Doc. 360 at 4. However, it is clear that the Liquidating Trustee's actions did not constitute an engagement of Appellants' services. *See* discussion of section 503(b), *supra*; *see also* Doc. 360 at 3 (stating that Appellants never received a response from the Liquidating Trustee). Moreover, as the Bankruptcy Judge correctly surmised, the Appellants should have known that

> appointment by the Court is necessary to be recognized as a professional...[Appellant] was duty bound to assure that before he performed any

> services for the Liquidating Trustee, he must be retained by the same, and seek the Court's approval...[i]t was not the Liquidating Trustee's burden to notify Mr. Silverio that neither the Law Firm nor Mr. Silverio represented the Estate in any litigation matters, simply because his [previous] employment automatically terminated with the entry of the Order Confirming the Amended Plan of Reorganization, as Modified.

Bankr. Doc. 371 at 5. Thus, Appellants' argument that they did not seek prior approval for their post-confirmation employment due to misrepresentations made by the Liquidating Trustee is undermined by the explicit instructions governing the retention of professionals found in the Confirmation Order. Therefore, the Bankruptcy Judge did not abuse his discretion in denying Appellants post-Confirmation fees on the basis of equitable estoppel.

**ACCORDINGLY**, it is therefore, **ORDERED AND ADJUDGED**:

1. The Order of the Bankruptcy Court denying the Verified Application for Payment by Liquidating Trustee of Attorney Fees is **AFFIRMED**.

2. Appellants' request for oral argument on this matter is **DENIED**, as moot.

**DONE AND ORDERED** at Ft. Myers, Florida, on July 14, 2011.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

**COPIES TO**:

UNITED STATES BANKRUPTCY JUDGE ALEXANDER L. PASKAY
COUNSEL OF RECORD